UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| TIMISHA WERITO, Individually and for Others Similarly Situated <br><br> v. <br><br> CORECIVIC OF TENNESSEE, LLC | Case No. _____ <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Timisha Werito (Werito) brings this class and collective action to recover unpaid overtime and other damages from CoreCivic of Tennessee, LLC (CoreCivic).

2. Werito worked for CoreCivic as a Licensed Practical Nurse (LPN) at the Cibola County Correction Center in Milan, New Mexico.

3. Like the Putative Class Members (as defined below), Werito regularly worked more than 40 hours in a week.

4. But CoreCivic did not pay for all the hours they worked.

5. Instead, CoreCivic automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6. Werito and the Putative Class Members were thus not paid for that time.

7. But CoreCivic fails to provide Werito and the Putative Class Members with *bona fide* meal breaks.

8. Instead, CoreCivic requires Werito and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

9. CoreCivic's auto-deduction policy violates the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act (NMMWA) by depriving Werito and the Putative Class Members of overtime pay for all overtime hours worked.

10. Further, CoreCivic uniformly requires Werito and the New Mexico Class Members (as defined below) to complete a mandatory security screening before clocking in for their shifts.

11. But Werito and the New Mexico Class Members were not paid for this "off the clock" work.

12. CoreCivic's mandatory pre-shift security screening practice violates the NMMWA by depriving Werito and the New Mexico Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. This Court has supplemental jurisdiction over the state-law subclass pursuant to 28 U.S.C. § 1367 because these claims arise from a common nucleus of operative facts.

15. This Court has personal jurisdiction over CoreCivic with respect to this action because CoreCivic conducts substantial business in New Mexico, including employing workers (like Werito) in New Mexico.

16. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391(b)(2).

17. Specifically, Werito worked for CoreCivic in Milan, New Mexico, which is in this District.

## PARTIES

18. Werito worked for CoreCivic as an LPN at the Cibola County Correction Center in Milan, New Mexico from approximately February 2020 until February 2021.

19. Throughout her employment, CoreCivic classified Werito as non-exempt and paid her on an hourly basis.

20. But CoreCivic subjected Werito to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

21. Additionally, throughout her employment, CoreCivic required Werito to complete a pre-shift security screening "off the clock" in violation of NMMWA.

22. Werito's written consent is attached as **Exhibit 1**.

23. Werito brings this action on behalf of herself and other similarly situated hourly, non-exempt CoreCivic employees who were subject to CoreCivic's automatic meal break deduction policy.

24. CoreCivic uniformly requires all these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

25. The collective of similarly situated employees is defined as:

> **All hourly, non-exempt CoreCivic employees providing patient care services who received an automatic meal period deduction at any time during the past 3 years ("FLSA Class Members" or "FLSA Class").**

26. Werito also seeks certification of such a class under FED. R. CIV. P. 23 and the NMMWA. The New Mexico class of similarly situated workers is defined as:

> **All hourly, non-exempt CoreCivic employees providing patient care services who received an automatic meal period deduction and/or were required to complete a mandatory pre-shift security screening while working in New Mexico at any time during the past 3 years ("New Mexico Class Members" or "New Mexico Class").**

27. The FLSA Class Members and the New Mexico Class Members are collectively referred to as the "Putative Class Members."

28. CoreCivic is a Tennessee limited liability company that maintains its headquarters in Nashville, Tennessee.

29. CoreCivic may be served with process by serving its registered agent: **Kennedy Moulton & Wells, PC, 2201 Third Street NW, Albuquerque, New Mexico 87102**.

## COVERAGE UNDER THE FLSA

30. At all relevant times, CoreCivic was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, CoreCivic was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, CoreCivic was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, and personal protective equipment – that have been moved in or produced for commerce.

33. At all relevant times, CoreCivic has had an annual gross volume of sales made or business done of not less than $500,000 each year.

34. At all relevant times, Warren and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

35.     CoreCivic uniformly deducted 30 minutes/shift from Werito and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

36.     As a result, CoreCivic failed to pay Werito and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

37.     CoreCivic's automatic meal break deduction policy, which deprives Werito and the Putative Class Members of overtime compensation for the weeks in which these employees work over 40 hours, is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

38.     CoreCivic bills itself as "the nation's leading provider of high-quality corrections and detention management" with operations across the United States, including in New Mexico.[1]

39.     CoreCivic employs patient care workers, including Werito and the Putative Class Members, to provide healthcare services and treat incarcerated persons in its various detention facilities.

40.     CoreCivic uniformly classifies these employees as non-exempt from overtime and pays them on an hourly basis.

41.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

42.     For example, Werito worked for CoreCivic as an LPN at the Cibola County Correction Center in Milan, New Mexico from approximately February 2020 until February 2021.

---

[1] https://www.corecivic.com/ (last visited March 23, 2023).

43. As an LPN, Werito's primary responsibilities included providing direct patient care to CoreCivic's patients at the Cibola County Correction Center in Milan, New Mexico, such as performing patient intakes, administering medications, monitoring patients, charting treatments and patient histories, and assisting doctors and other patient care staff.

44. Throughout her employment, CoreCivic classified Werito as non-exempt and paid her on an hourly basis.

45. Throughout her employment, CoreCivic subjected Werito to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

46. Further, throughout her employment, CoreCivic required Werito to complete pre-shift security screenings "off the clock."

47. Werito and the Putative Class Members performed their jobs under CoreCivic's supervision, and using materials, equipment, and technology approved and supplied by CoreCivic.

48. CoreCivic requires Werito and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

49. At the end of each pay period, Werito and the Putative Class Members received wages from CoreCivic that were determined by common systems and methods that CoreCivic selected and controlled.

50. CoreCivic requires its hourly, non-exempt employees, including Werito and the Putative Class Members, to record their hours worked using CoreCivic's timeclock system.

51. Further, CoreCivic subjects its hourly, non-exempt employees, including Werito and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

52. Specifically, CoreCivic automatically deducts 30 minutes from Werito and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

53. But CoreCivic fails to provide Werito and the Putative Class Members with *bona fide* meal periods.

54. Instead, CoreCivic requires Werito and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

55. This unpaid time is compensable under the FLSA and NMMWA because CoreCivic knew, or should have known, that (1) Werito and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 consecutive minutes.

56. CoreCivic failed to exercise its duty to ensure Werito and the Putative Class Members were not performing work that CoreCivic did not want performed during their unpaid "meal breaks."

57. Despite accepting the benefits, CoreCivic did not pay Werito and the Putative Class Members for the compensable work they performed during their "meal breaks."

58. Thus, under CoreCivic's uniform automatic meal break deduction policy, Werito and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA and NMMWA.

59. Given the nature of CoreCivic's business, the detention facilities where Werito and the New Mexico Class Members work is secured by locked doors and metal detectors.

60. CoreCivic requires Werito and the New Mexico Class Members to complete mandatory pre-shift security screenings "off the clock."

61. Specifically, when Werito and the New Mexico Class Members arrive at the detention facilities, they are required to empty their pockets and bags; remove their shoes, belts, jackets, and any other metal objects from their person; submit all personal items for inspection; and then walk through a metal detector.

62. If Werito and the New Mexico Class Members were unable to clear the metal detector screening, they would be subject to further search.

63. After clearing the metal detectors (and any subsequent searches), Werito and the New Mexico Class Members had to gather their items and put back on their shoes, belts, and jackets.

64. These mandatory pre-shift security screenings lasted approximately 10-15 minutes per day and occurred prior to Werito and the New Mexico Class Members clocking in for their shifts.

65. CoreCivic, however, does not pay Werito and the New Mexico Class Members for these mandatory "off the clock" security screenings.

66. But the NMMWA requires CoreCivic to pay Werito and the Putative Class Members for this compensable work time.

67. Indeed, CoreCivic mandates and requires Werito and the New Mexico Class Members to complete these pre-shift security screenings; the security screenings are completed on CoreCivic's premises; the security screenings are controlled by CoreCivic; and the security screenings are undertaken primarily for CoreCivic's (and its business') benefit.

68. Further, these security screenings are necessary to the principal work Werito and the New Mexico Class Members perform – providing healthcare services to incarcerated persons in prison and detention facilities.

69. CoreCivic requires Werito and the New Mexico Class Members to complete these pre-shift security screenings to ensure the overall safety of the prison and detention facilities by preventing weapons and other contraband from entering the facilities and impacting Werito and the New Mexico Class Members from safely performing their patient care responsibilities.

70. Thus, these mandatory pre-shift security screenings are integral and indispensable to Werito and the New Mexico Class Members' patient care work.

71. Indeed, CoreCivic could not have eliminated the security screenings altogether without impairing Werito and the New Mexico Class Members' ability to perform their work.

72. CoreCivic's uniform pre-shift security screening practice violates the NMMWA by depriving Werito and the New Mexico Class Members of overtime pay for all overtime hours worked because CoreCivic fails to include time these employees spend performing compensable work (completing the mandatory pre-shift security screenings) in their total hours worked.

73. Similarly, CoreCivic subjects Werito and the New Mexico Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment.

74. CoreCivic's uniform rounding policy violates the NMMWA by depriving Werito and the New Mexico Class Members of overtime pay for all overtime hours worked because CoreCivic fails to include all work time in these employees' total hours worked.

75. CoreCivic knows Werito and the Putative Class Members routinely perform work "off the clock" before their shifts and/or during their unpaid meal breaks because CoreCivic expects and requires these employees to do so.

76. But CoreCivic does not pay Werito and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and NMMWA.

77. Werito worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

78. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

79. Indeed, CoreCivic typically schedules Werito and the Putative Class Members to work 12-hour shifts for up to 4 days a week.

80. And Werito and the Putative Class Members regularly are also required to work before their shifts and/or during their unpaid meal breaks "off the clock" in order to complete their job duties and patient care responsibilities.

81. As a result, Werito and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

82. When Werito and the Putative Class Members worked more than 40 hours in a workweek, CoreCivic did not pay them 1.5 times their regular hourly rate for all overtime hours worked because CoreCivic failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

83. CoreCivic knew, or should have known, it was subject to the FLSA and NMMWA, including their respective overtime provisions.

84. CoreCivic knew, or should have known, the FLSA required it to pay employees, including Werito and the Putative Class Members, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

85. CoreCivic knew, or should have known, the NMMWA required it to pay employees, including Werito and the New Mexico Class Members, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a seven-day period.

86. CoreCivic knew, or should have known, Werito and the Putative Class Members worked more than 40 hours in a week.

87. CoreCivic knew, or should have known, Werito and the Putative Class Members regularly worked during their unpaid meal breaks because CoreCivic expected and required them to do so.

88. CoreCivic knew, or should have known, Werito and the New Mexico Class Members regularly worked "off the clock" before their shifts because CoreCivic required them to complete mandatory pre-shift security screenings.

89. CoreCivic knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA and NMMWA.

90. CoreCivic knowingly, willfully, and/or in reckless disregard carried out these illegal policies and practices that deprived Werito and the Putative Class Members of overtime compensation for all overtime hours worked in violation of the FLSA and NMMWA.

91. Nonetheless, CoreCivic failed to pay Werito and the Putative Class Members overtime for all hours these employees worked in excess of 40 hours in a workweek.

92. CoreCivic's failure to pay Werito and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime for all overtime hours worked made in good faith.

## CLASS AND COLLECTIVE ALLEGATIONS

93. Werito brings her claims as a class and collective action under the FLSA and the NMMWA.

94. The Putative Class Members were victimized by CoreCivic's pattern, practice, and/or policy which is in willful violation of the FLSA and MNNWA.

95. Other Putative Class Members worked with Werito and indicated they were paid in the same manner, performed similar work, and were subject to CoreCivic's same automatic meal break deduction policy.

96. Based on her experiences with CoreCivic, Werito is aware CoreCivic's illegal practices were imposed on the Putative Class Members.

97. The Putative Class Members are similarly situated in all relevant respects.

98. The Putative Class Members were all subject to CoreCivic's automatic meal break deduction policy that deprived these employees of overtime pay for all overtime hours worked.

99. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

100. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

101. Rather, the Putative Class is held together by CoreCivic's uniform automatic meal break deduction policy that systematically deprived Werito and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

102. The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

103. CoreCivic's failure to pay wages and overtime compensation for all overtime hours worked as required by the FLSA and NMMWA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

104. Werito's experiences are therefore typical to the experiences of the Putative Class Members.

105. Werito has no interest contrary to, or in conflict with, the Putative Class Members.

106. Like each Putative Class Member, Werito has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

107. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

108. Absent this class and collective action, many Putative Class Members likely will not obtain redress of their injuries, and CoreCivic will reap the unjust benefits of violating the FLSA and applicable state labor laws.

109. Further, even if some of the Putative Class Members could afford individual litigation against CoreCivic, it would be unduly burdensome to the judicial system.

110. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Putative Class Members and provide for judicial consistency.

111. The questions of law and fact that are common to each member of the FLSA and New Mexico Classes predominate over any questions affecting solely the individual members.

112. Among the common questions of law and fact are:

    a. Whether CoreCivic engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and/or NMMWA;

b. Whether CoreCivic's automatic meal break deduction policy deprived Werito and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and/or NMMWA;

c. Whether CoreCivic failed to pay Werito and the Putative Class Members overtime for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks in violation of the FLSA and/or NMMWA;

d. Whether CoreCivic knew, or had reason to know, Werito and the Putative Class Members were requested, suffered, permitted, or allowed to during their unpaid meal breaks in violation of the FLSA and/or NMMWA;

e. Whether CoreCivic uniformly applied its pre-shift security screening practice to all New Mexico Class Members;

f. Whether the time Werito and the New Mexico Class Members spent completing mandatory pre-shift security screenings is compensable under the NMMWA;

g. Whether CoreCivic's mandatory pre-shift security screening practice deprived Werito and the New Mexico Class Members of overtime pay for all overtime hours worked in violation of the NMMWA;

h. Whether CoreCivic's violations of the FLSA and/or NMMWA resulted from a continuing course of conduct; and

i. Whether CoreCivic's violations of the FLSA and/or NMMWA were willful.

113. Werito and the Putative Class Members sustained damages arising out of CoreCivic's illegal and uniform employment policies.

114. The overtime owed to Werito and the Putative Class Members will be calculated using the same records and using the same formula.

115. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to CoreCivic's records, and there is no detraction from the common nucleus of liability facts.

116. Therefore, the issue of damages does not preclude class or collective treatment.

117. Werito knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

118. CoreCivic is liable under the FLSA and NMMWA for failing to pay overtime to Werito and the Putative Class Members.

119. Consistent with CoreCivic's illegal automatic meal break deduction policy, Werito and the Putative Class Members were not paid the proper premium overtime compensation for all overtime hours worked.

120. As part of its regular business practices, CoreCivic intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NMMWA with respect to Werito and the Putative Class Members.

121. CoreCivic's illegal automatic meal break deduction policy deprived Werito and the Putative Class Members of overtime wages for all hours worked in excess of 40 hours in a workweek, which they are owed under federal and/or state law.

122. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

123. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

124. Those similarly situated employees are known to CoreCivic, are readily identifiable, and can be located through CoreCivic's records.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA
## (FLSA CLASS)

125. Werito realleges and incorporates all other paragraphs by reference.

126. Werito brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

127. CoreCivic violated, and is violating, the FLSA by failing to pay Werito and the FLSA Class Members overtime for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

128. Throughout the relevant period, CoreCivic expected and required Werito and the FLSA Class Members to remain on-duty and be available to work during their unpaid meal breaks.

129. Werito and the FLSA Class Members have been harmed as a direct and proximate result of CoreCivic's unlawful conduct because they have been deprived of wages owed for work that they performed and from which CoreCivic derived a direct and substantial benefit.

130. CoreCivic knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Werito and the FLSA Class Members overtime compensation for all overtime hours worked.

131. CoreCivic's failure to pay these employees overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

132. Accordingly, Werito and the FLSA Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NMMWA
## (NEW MEXICO CLASS ONLY)

133. Werito realleges and incorporates all other paragraphs by reference.

134. Werito brings her NMMWA claim as a class action under FED. R. CIV. P. 23.

135. CoreCivic violated, and is violating, the NMMWA by failing to pay Werito and the New Mexico Class Members overtime for all hours worked in excess of 40 in a single workweek.

136. At all relevant times, CoreCivic was subject to the requirements of the NMMWA.

137. At all relevant times, CoreCivic employed Werito and each New Mexico Class Member as "employees" within the meaning of the NMMWA.

138. Throughout the relevant period, CoreCivic expected and required Werito and the New Mexico Class Members to remain on-duty and be available to work throughout their shifts, including during their unpaid meal breaks.

139. Throughout the relevant period, CoreCivic expected and required Werito and the New Mexico Class Members to complete mandatory pre-shift security screenings "off the clock" for which they were not paid.

140. Werito and the New Mexico Class Members have been harmed as a direct and proximate result of CoreCivic's unlawful conduct because they have been deprived of wages owed for work that they performed and from which CoreCivic derived a direct and substantial benefit.

141. CoreCivic's pay policies violate the NMMWA because they deprived Werito and the New Mexico Class Members of overtime pay for all hours worked in excess of 40 in a seven-day period. *See* NMSA § 50-4-22(D).

142. CoreCivic knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Werito and the New Mexico Class Members overtime compensation for all overtime hours worked.

143. CoreCivic's failure to pay these employees overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

144. Accordingly, Werito and the New Mexico Class Members are entitled to recover their unpaid overtime compensation plus interest, treble damages (NMSA § 50-4-26(C)), and attorney's fees and costs (NMSA § 50-4-26(E)).

## JURY DEMAND

145. Werito demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Werito, individually and on behalf of the Putative Class Members, seeks the following relief:

a. An Order designating the FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. An Order designating the New Mexico Class as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Werito and her counsel to represent the interests of the federal collective and the New Mexico Class;

d. An Order pursuant to Section 16(b) of the FLSA finding CoreCivic liable for unpaid back wages due to Werito and the FLSA Class Members, as well as for liquidated damages in amount equal to their unpaid compensation;

e. An Order pursuant to the NMMWA finding CoreCivic liable for unpaid back wages due to Werito and the New Mexico Class Members, as well as for treble damages in an amount equal to two times their unpaid compensation;

f. Judgment awarding Werito and the Putative Class Members all unpaid overtime and other damages available under the FLSA and NMMWA;

g. An Order awarding attorneys' fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS FOR IN CHARGE FOR PLAINTIFF**